

# NUMBER 13-10-501-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JAVIER ALANIZ,**                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

---

### On appeal from the 148th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes**
**Memorandum Opinion by Justice Vela**

Following a trial to the bench, appellant, Javier Alaniz, was convicted of

aggravated assault with a deadly weapon, a motor vehicle. *See* TEX. PENAL CODE ANN.

§§ 22.01(a)(2), 22.02(a)(2) (West Supp. 2010). During the punishment hearing, the trial court found appellant had two prior felony convictions and assessed punishment at twenty-five years' imprisonment. In four issues, appellant challenges the sufficiency of the evidence to support his conviction, and complains of ineffective assistance of counsel. We affirm.

## I. FACTUAL BACKGROUND

Angie Loredo and appellant met in 2007 and began a dating relationship. On the night of June 21, 2009, appellant was at Loredo's house and began accusing her of cheating on him. When she went into her room, he jumped on her and grabbed her by the face. After this incident, they broke up.

The next evening, appellant called Loredo and asked her to pick him up at his mother's house; however, she refused his request. Fearing he would come to her home, she put her six-year-old daughter in her van and started driving to her mother's house. While Loredo waited for a traffic light to change, appellant, who was driving a Dodge Ram truck, pulled up on the right side of her vehicle. He started hitting her window and telling her to get out of the car. She ignored him, and when the light changed, she drove away. He followed her and pulled up on her right side. She testified, "And then he kept going and then he turn [sic] around and then that's when he struck me . . . [with the] vehicle." She stated that when appellant hit her car, "[I]t kind of made me go to the other side" and "I was scared and I was worried, because I had my daughter in the car with me." After the impact, Loredo parked her vehicle, and appellant parked his truck near her vehicle. When appellant exited his truck, she asked him, "'How can you do this to me? If you say

2

you love me, how can you do this to me?'"  He replied, "'Because you were cheating on me.'"  After this exchange, appellant left the scene.

When the prosecutor asked Loredo, "Mr. Alaniz [appellant] hit you with his vehicle or the vehicle he was driving; is that correct?", she said, "Yes."  She testified appellant caused "close to" $1,800 in damages to her vehicle.

Detective James Lerma, who investigated this incident, testified Loredo's vehicle had damage to the front-right quarter panel on the passenger side.  When the prosecutor asked him, "And is that consistent with what Ms. Loredo told you about the incident that took place?" he said, "Yes, sir."  Referring to a Dodge Ram truck, the prosecutor asked Detective Lerma, "[H]ave you ever seen it used as a deadly weapon?"  To this, he said, "Yes, I have, sir."  He stated that Allen Samuels estimated the damage to Loredo's vehicle at $1,884.

Appellant did not testify during the guilt-innocence phase of this trial, and the defense rested without calling any witnesses.

## II. DISCUSSION

### A. Sufficiency of the Evidence

We address the fourth issue first wherein appellant contends the evidence is legally insufficient to support his conviction.  Appellant argues the State:  (1) failed to prove he threatened Loredo with imminent bodily injury; and (2) failed to prove the vehicle he was driving was exhibited as a deadly weapon.

3

**1. Standard of Review**

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, "we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *See id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). In addition, "'[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d 114, 116

4

(Tex. Crim. App. 1992)), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).

In this case, the indictment alleged, in relevant part, that appellant "intentionally or knowingly threaten[ed] Angie Loredo with imminent bodily injury by STRIKING HER VEHICLE, and did then and there use or exhibit a deadly weapon, to-wit: A MOTOR VEHICLE, during the commission of said assault, . . . ." (emphasis in original). Section 22.01 of the penal code sets out three separate and distinct assaultive crimes, one of which is relevant to the present discussion: "(a) A person commits an offense if the person: . . . (2) Intentionally or knowingly threatens another with imminent bodily injury . . ." *Id.* § 22.01(a)(2). Section 22.02 of the penal code defines the crime of aggravated assault as being an assault under section 22.01, and the person "(1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(1), (2). Because the victim in this case, Angie Loredo, did not suffer any injuries during the collision, we evaluate the facts under subsection 2 of section 22.02(a).

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). In *Ex parte McKithan*, the court of criminal appeals stated that "[a] motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodily injury and therefore can be a deadly weapon." 838 S.W.2d 560, 561 (Tex. Crim. App. 1992). "Specific intent to use a motor vehicle as a deadly weapon is not required." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

5

In *McCain v. State*, the court of criminal appeals recognized that placing the word "capable" in the definition of a deadly weapon "enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). In *Drichas*, the court of criminal appeals, referring to the deadly weapon statute, said that "[c]apability is evaluated based on the circumstances that existed at the time of the offense." *Drichas*, 175 S.W.3d at 799. In that case, the defendant evaded police in his vehicle and led them on a fifteen-mile chase. The court of appeals found the evidence insufficient to support a finding that a vehicle was a deadly weapon because, although the manner the defendant used his vehicle was sufficient to render it a deadly weapon, the State failed to show actual danger. *Id*. at 797. The court of criminal appeals disagreed with the lower court and held that the manner in which the defendant used his vehicle made it capable of causing death or serious bodily injury. *Id*. at 798. The court agreed that while the danger posed "must be actual, and not simply hypothetical, the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding". *Id*. at 799. The court of criminal appeals stated that the deadly weapon "statute specifically pertains to motor vehicles, so a deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." *Id*.

6

The court of criminal cppeals in *Tucker v. State* re-emphasized the breadth of *McCain* when it explained,

> The placement of the word "capable" is crucial to understanding this method of determining deadly weapon status. The State is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is *capable* of causing death or serious bodily injury."

*Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (emphasis in original) (footnotes omitted). Because appellant used a motor vehicle, i.e., a Dodge Ram truck, to assault Loredo, we will evaluate the truck's capability of causing death or serious bodily injury based on the circumstances as they existed at the time the offense was committed.

Loredo testified appellant, who was driving a Dodge Ram truck, pulled up on her right side "[a]nd then he kept going and then he turn [sic] around and then that's when he struck me . . . [with the] vehicle." She stated that when appellant hit her car, "[I]t kind of made me go to the other side" and "I was scared and I was worried, because I had my daughter in the car with me." The circumstances surrounding the collision show that appellant intentionally used the vehicle he was driving to hit the vehicle Loredo was driving. When Loredo asked appellant why he did this to her he said, "'because you were cheating on me.'" "Motive is a significant circumstance indicating guilt." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Thus, appellant's act of using the vehicle he was driving to hit Loredo's vehicle supports the trial court's finding that appellant's vehicle, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See McCain,* 22 S.W.3d at 503 (stating "an object is a deadly weapon if the actor intends a use of the

7

object in which it would be capable of causing death or serious bodily injury"). After viewing all of the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient to support the trial court's conclusion that appellant committed the offense of aggravated assault by use of a deadly weapon. Issue four is overruled.

## B. Ineffective Assistance of Counsel

In issue one, appellant contends defense counsel was ineffective for failing to present a proper defense.

### 1. Standard of Review

The Sixth Amendment to the United States Constitution, and section ten of Article 1 of the Texas Constitution, guarantee people the right to assistance of counsel in a criminal prosecution. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10). The right to counsel requires more than a lawyer's presence; it necessarily requires the right to effective assistance. *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). However, the right does not provide a right to error-free counsel,[1] but rather to objectively reasonable representation. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

"To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland*."[2] *Id.* (citing *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986)). "Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and

---

[1] *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

[2] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

(2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 689). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Id.* (citing *Strickland*, 466 U.S. at 687). "In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Id.* "To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687).

"An appellate court must make a 'strong presumption that counsel's performance fell within the wide range of reasonably professional assistance.'" *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the

representation and the circumstances of each case without the benefit of hindsight." *Id.* (citing *Robertson*, 187 S.W.3d at 483). "While a single error will not typically result in a finding of ineffective assistance of counsel, an egregious error may satisfy the *Strickland* prongs on its own." *Id.* (citing *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (stating counsel's failure to request jury instruction on issue of necessity when appropriate was both deficient and prejudicial)); *see Thompson*, 9 S.W.3d at 813 (stating that "while this Court has been hesitant to 'designate any error as per se ineffective assistance of counsel as a matter of law,' it is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance").

"In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal." *Id.* (citing *Massaro v. United States*, 538 U.S. 500, 508 (2003); *Robinson v. State*, 16 S.W.3d 808, 813 (Tex. Crim. App. 2000)). "However, this is a difficult hurdle to overcome; the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* (citing *Strickland*, 466 U.S. at 690; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)).

The court of criminal appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Id.* (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Mitchell v. State*, 68

10

S.W.3d 640, 642 (Tex. Crim. App. 2002)); *see Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004). "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id.* (quoting *Bone*, 77 S.W.3d at 833). "Unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Id.*

### 2. Analysis

First, appellant argues defense counsel was ineffective because he did not "properly investigate" the case. A criminal defense attorney has a duty to make an independent investigation of the facts of a case. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). A breach of this duty may result in a finding of ineffective assistance when "the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). In defining the duty to investigate, the United States Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland*, 466 U.S. at 691.

Here, appellant did not file a motion for new trial, did not obtain an affidavit from his defense counsel, and did not request a post-conviction hearing regarding defense

11

counsel's performance. Thus, the record is silent regarding the extent of defense counsel's investigation. We point out that "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 913. When the record is silent with respect to the reasons for counsel's conduct, as in this case, a finding that defense counsel was ineffective would require impermissible speculation by the appellate court. *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Even assuming defense counsel's failure to investigate the case made him "deficient" for purposes of the *Strickland* test, appellant has not shown how his representation would have been improved with the use of the additional investigation or that there is a reasonable probability that but for defense counsel's deficient performance, the result of the proceeding would have been different.

Second, appellant argues defense counsel was ineffective for failing to "confer with appellant to prepare for trial." However, the record is silent regarding whether defense counsel failed to confer with appellant in preparation for trial. Thus, appellant has not demonstrated that defense counsel was ineffective on this basis.

Third, appellant argues defense counsel was ineffective because he had no command of the facts. In order to render reasonably effective assistance, an attorney must have a firm command of the facts of the case and the governing law. *Ex parte Welborn*, 785 S.W.2d at 393; *Ex parte Lilly*, 655 S.W.2d 490, 493 (Tex. Crim. App. 1983). The record in this case does not show that defense counsel lacked a firm command of the facts or governing law. Thus, the record is insufficient to enable this Court to determine

12

that defense counsel's representation was deficient in order to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Fourth, appellant argues defense counsel was ineffective because he did not present all available evidence. Because appellant does not state what evidence defense counsel failed to present, we cannot determine whether counsel's performance was deficient. Thus, appellant has failed to meet the first prong of the *Strickland* test because he has not shown counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689.

Fifth, appellant argues defense counsel was ineffective for failing to make timely objections. Appellant does not state what objections defense counsel failed to make in a timely manner. Even assuming defense counsel was deficient for failing to make timely objections, appellant has not shown how counsel's performance prejudiced the outcome of his case.

Sixth, appellant argues defense counsel was ineffective for failing to call an expert witness during the guilt-innocence phase. When an appellant argues defense counsel's conduct constituted ineffective assistance by failing to call an expert witness, the appellant must show that the expert's testimony would have been beneficial to him. *See Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd); *Teixeira v. State*, 89 S.W.3d 190, 194 (Tex. App.—Texarkana 2002, pet. ref'd). The appellant must also show that the witness was available to testify. *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Johnson v. State*, 959 S.W.2d 230, 236 (Tex. App.—Dallas 1997,

13

no pet.).   In the case before us, appellant does not state (1) what expert witness defense counsel failed to call, (2) whether an expert witness was available to testify, or (3) how an expert witness would have been beneficial to him.   Thus, appellant has failed to meet the first prong of the *Strickland* test because he has not shown counsel's representation fell below an objective standard of reasonableness.   *See Strickland*, 466 U.S. at 689.

Seventh, appellant argues defense counsel was ineffective for failing to call any witnesses to testify on his behalf.   In the context of an ineffective-assistance claim, a criminal defense lawyer has a duty to make an independent investigation of the facts of a case, which includes seeking out and interviewing potential witnesses.   *Brennan v. State*, 334 S.W.3d 64, 71 (Tex. App.—Dallas 2009, no pet.).   An ineffective assistance of counsel claim based on counsel's failure to call witnesses fails in the absence of a showing that the witnesses were available to testify and that the defendant would have benefitted from their testimony.   *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004).   In this case, appellant does not state (1) what witness's defense counsel failed to call, (2) whether the witnesses were available to testify, and (3) how the witnesses's testimony would have benefitted him.   Thus, appellant has failed to meet the first prong of the *Strickland* test because he has not shown counsel's representation fell below an objective standard of reasonableness.   *See Strickland*, 466 U.S. at 689.

Eighth, appellant argues defense counsel was ineffective for failing to file a discovery motion.   The record does not reflect whether defense counsel was denied access to the State's files in this case.   Accordingly, we cannot determine whether counsel needed to file a discovery motion.   Thus, appellant has failed to meet the first

14

prong of the *Strickland* test because he has not shown counsel's representation fell below an objective standard of reasonableness.    *See Strickland*, 466 U.S. at 689.

Ninth, appellant argues defense counsel was ineffective for failing to call him as a witness.   A defendant has a right to testify.   *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005).   However, appellant does not argue, and the record does not reflect, that he wanted to testify.   Without proof from appellant that there is no plausible professional reason for defense counsel's decision not to call him as a witness, we may not speculate on why counsel acted as he did.    *See Bone*, 77 S.W.3d at 835–36.   Thus, appellant has failed to establish the first prong of the *Strickland* test.   *See Salinas v. State*, 163 S.W.3d 734, 740–41 (Tex. Crim. App. 2005) (holding that counsel not ineffective when record does not reflect that defendant asserted his right to testify and counsel failed to protect it).

Tenth, appellant argues defense counsel was ineffective for failing to "properly challenge State experts."   The witness whom appellant is referring to is Detective James Lerma, the officer who investigated this case.   Appellant does not direct us to any portion of the record where the State offered him as an expert.   Thus, appellant has failed to meet the first prong of the *Strickland* test because he has not shown counsel's representation fell below an objective standard of reasonableness.   *See Strickland*, 466 U.S. at 689.

Lastly, appellant argues defense counsel was ineffective for failing to file any motions.   Appellant did not obtain a motion for new trial hearing, and no direct evidence in the record establishes defense counsel's reasoning for defending the case as he did.

15

We therefore presume that counsel had a plausible reason for his actions. *See Thompson*, 9 S.W.3d at 814. On appeal, appellant has failed to explain why the actions by defense counsel fell below an objectionable standard of reasonableness. We hold appellant did not meet the first prong of *Strickland* because he has failed to show and the record does not demonstrate that his counsel's performance fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 812. Issue one is overruled.

In issue two, appellant contends defense counsel was ineffective for failing to present evidence regarding appellant's mental illness. Specifically, he asserts that defense counsel's performance fell below "reasonable standards" by failing to present any evidence concerning his mental illness. The clerk's record contains a document entitled, "OBSERVATION OF PERSON SUSPECTED OF HAVING MENTAL ILLNESS OR MENTAL RETARDATION," which states, in relevant part: "The Nueces County Sheriff's Office has received credible information within the preceding 72 hours that establishes reasonable cause that the above named individual [appellant] has a mental illness or is mentally retarded." Below this statement is a box with a check mark in it. The following language appears next to the box: "Individual is delusional and making statements that are illogical and irrational." At the bottom of this document appears the statement: "MHMR CARE Match Report[.]" Below this statement appears the following: "Inmate stated that he was MHMR, he has attempted suicide before, and wants to hurt someone." This document also includes an "ORDER OF REFERRAL BY MAGISTRATE FOR MHMR ASSESSMENT[.]" Below this heading is a box with a check mark in it. The following language appears next to the box: "The Magistrate finds that

16

there exists reasonable cause to believe that the individual may have a Mental Illness/Mental Retardation and therefore orders the Nueces County MHMR to conduct an assessment under Art. 16.22 of the Texas Code of Criminal Procedure."  The order is signed by the magistrate, and it is dated March 30, 2010.  Appellant did not provide the results of the assessment ordered by the magistrate and does not direct us to any portion of record that contains the results of the assessment.

### 3. Applicable Law

In *Wiggins v. Smith*, the United States Supreme Court granted federal habeas corpus relief based on a defense attorney's failure to further investigate and put forth mitigating punishment evidence, showing severe physical and sexual abuse suffered by Wiggins which counsel apparently knew about before trial.  *Wiggins v. Smith*, 539 U.S. 510, 515–16 (2003).  "Under the test set forth in *Wiggins*, we must decide whether the actions taken by counsel in investigating [appellant's] background were reasonable, specifically, 'whether the investigation supporting counsel's decision not to introduce mitigating evidence of [appellant's] background *was itself reasonable*.'"  *Ex parte Martinez*, 195 S.W.3d, 727 (Tex. Crim. App.) (quoting *Wiggins*, 539 U.S. at 523) (emphasis in original).  "A failure to uncover and present mitigating evidence cannot be justified as a tactical decision when defense counsel [has] 'not' fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background.'"  *Rivera v. State*, 123 S.W.3d 21, 31 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (quoting *Wiggins*, 539 U.S. at 520).

**4. Analysis**

Here, the quantum of evidence already known to appellant's defense counsel is unknown. The record does not include a declaration by defense counsel, stating what he knew about appellant's alleged mental illness or whether he was aware of the results of the mental-health assessment ordered by the magistrate. Even assuming defense counsel knew the results of the assessment, the results may have been unfavorable to appellant. For that reason, defense counsel may have decided not to present the results of the assessment as mitigating evidence. To overcome the presumption of reasonable professional assistance, "'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Salinas*, 163 S.W.3d at 740 (quoting *Thompson*, 9 S.W.3d at 813). Even assuming counsel's performance was deficient, appellant has failed to demonstrate that the defense was prejudiced by counsel's performance. We overrule the second issue.

In issue three, appellant contends defense counsel was ineffective for failing to make timely objections during the trial. Appellant directs us to several instances throughout the trial where he claims defense counsel should have made objections. Assuming without deciding that counsel's performance was deficient, appellant has failed to prove that his defense was prejudiced by the absence of these objections. Issue three is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
8th day of December, 2011.