**Jerold Boyd JOHNSTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–95–00009–CR.**

Court of Appeals of Texas, Dallas.

April 7, 1997.

---

John G. Tatum, Dallas, for appellant.

Donald G. Davis, Assistant District Attorney, Dallas, for state.

Before LAGARDE, WHITTINGTON and JAMES, JJ.

## OPINION

LAGARDE, Justice.

Jerold Boyd Johnston appeals his conviction by a jury of driving while intoxicated. In three points of error, Johnston contends that he was denied effective assistance of counsel at trial and the trial court erred in admitting into evidence the jail nurse's notes taken at the time she withdrew his blood. We affirm the trial court's judgment.

On March 23, 1991, Dallas Police Officers Managhen and Martin stopped Johnston for speeding. Johnston was the only occupant of the car. Managhen smelled alcohol on Johnston's breath, Johnston had to hold the door handle to stand, and Johnston swayed when he walked. Martin noticed a strong odor of alcohol on Johnston's breath, Johnston's bloodshot eyes, his slurred speech, and his affected balance. Managhen and Martin administered four field sobriety tests, which Johnston failed. Martin testified, without objection, that he remembered Johnston saying he had three or four drinks that evening. On cross-examination, Martin testified that he elicited this statement from Johnston before giving *Miranda* warnings.[1] Managhen and Martin both formed the opinion that Johnston did not have the normal use of his mental or physical faculties because of alcohol consumption.

At the jail, Johnston did not take a breath test, but the intoxilyzer operator smelled alcohol on Johnston's breath and noticed his bloodshot eyes. The intoxilyzer operator's opinion was that Johnston did not have the normal use of his mental or physical faculties because Johnston was intoxicated.

After Johnston consented to a blood test, a nurse in the jail drew Johnston's blood and gave the sample to the officer. Analysis revealed that Johnston's blood alcohol content was 0.13 grams of ethanol per one hundred milliliters of blood.

The State charged Johnston by information, the first paragraph of which stated:

JEROLD BOYD JOHNSTON hereinafter styled Defendant, heretofore, on or about the 23rd day of MARCH A.D., 1991 in the County of Dallas and State of Texas, did unlawfully then and there drive and operate a motor vehicle in a public place in Dallas County, Texas, to-wit: a street or highway, while intoxicated, in that the defendant did not have the normal use of his mental and physical faculties by reason of the introduction of alcohol, into defendant's body, and defendant had an alcohol concentration of at least 0.10.

The information also contained a second paragraph alleging a prior DWI conviction within ten years of the date of the primary offense.

Johnston pleaded not guilty before the jury to the primary offense. During the jury trial, Johnston testified to the following: He had only one and one-half beers on the night of his arrest. After he, his brother, and a friend left the restaurant where he consumed the beer, he drove to a store to buy more beer for his brother, who went into the store alone. His brother and the friend were in the car with him when he was arrested. Johnston's brother was on his way to testify at trial, but was unable to attend because he was called away on a work-related emergency.

The application paragraph of the jury charge stated:

Now, therefore, if you find and believe from the evidence, beyond a reasonable doubt that the defendant, Jerold Boyd Johnston, on or about the 23rd day of March, 1991, in the County of Dallas and State of Texas was intoxicated, in that the defendant did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into the defendant's body; or that the defendant had an alcohol concentration of 0.10 or more, and while so intoxicated on said date did then and there drive or operate a motor vehicle in a public place, to-wit: a street or highway in the County of Dallas and State of Texas, as charged in the information, you will find the defendant guilty as charged in the information. If you do not so find and believe from the evidence beyond a reasonable doubt, or if you have a

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

reasonable doubt thereof, you will acquit the defendant.

You are further instructed that you must find and believe from the evidence that the defendant was intoxicated, as that term is herein defined, at the very time he is alleged to have driven or operated a motor vehicle in a public place. If you do not so find and believe or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, Not Guilty. While deliberating, the jury wrote the court a note asking whether this was Johnston's first DWI arrest. The court answered by saying, "You have all the law and evidence before you upon which to base a verdict. Please continue with your deliberations." The jury wrote the court a second note stating: "[w]e have voted and we are not in agreement. (50/50) What shall we do?" The court responded by telling the jury to continue deliberating. After further deliberation, the jury found Johnston guilty.

Johnston elected to have the court assess punishment. In open court, Johnston and the State entered a stipulation to the second paragraph of the indictment. The court assessed punishment at three hundred sixty days in jail, probated, and a fine of five hundred dollars.

At the hearing on Johnston's motion for new trial, Johnston contended he received ineffective assistance of counsel at trial. The only two witnesses who testified at the hearing were Johnston and his brother, Michael. Michael testified to the following: Johnston's counsel first notified him of the trial date and discussed the case with him the night before the first day of trial. This late notice prevented Michael from appearing at trial because he had to go to work the next day. Michael contended that but for this late notice, he would have testified at trial that he and his friend Alphonso were with Johnston from about 9:30 p.m. until and including the time of the arrest, that Johnston drank only one and one-half beers that night, that John-

ston went into the store to buy the beer, and that Johnston was not intoxicated.

Johnston testified as follows: He went over the facts of the case with his counsel on his initial visit. Counsel promised to do "a bunch of things" that he never did, including interviewing his witnesses. Johnston's mother was notified of the hearing on Johnston's motion for new trial, but could not attend due to illness. Counsel did not notify him that the case was going to trial until the day before trial. Counsel first contacted Michael the night after the first day of trial. Johnston's mother gave an affidavit summarizing what she would have stated in testimony, and Johnston attached this affidavit to his motion for new trial.[2]

Johnston presented no other evidence at the new trial hearing. The court denied Johnston's motion for new trial.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first two points of error, Johnston contends that he was denied effective assistance of counsel because his trial attorney (1) did not adequately advise him of the trial settings, depriving him of time to adequately prepare himself and his witnesses, and (2) did not properly investigate Johnston's witnesses who could testify to Johnston's sobriety. The State argues that Johnston has not shown his trial counsel's performance was deficient and that the record clearly shows Johnston received effective assistance of counsel.

The standard for testing claims of ineffective assistance of counsel was announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3] In *Strickland,* the Supreme Court held that a claimant must prove that counsel's representation so undermined the "proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

2. This affidavit, however, does not appear in the transcript on appeal.

3. Texas adopted the *Strickland* two-prong test for judging claims under the Texas Constitution. *See Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.

Crim.App.1986). Johnston's brief does not clearly state whether his claim of ineffective assistance of counsel is based on federal or state grounds. We therefore analyze this claim under both.

result." *Id.* at 686, 104 S.Ct. at 2064. Appellant must prove that: (1) his counsel's representation was deficient; and (2) the deficient performance was so serious that it prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. This means that appellant must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms, and there is a reasonable probability that but for counsel's deficiency the result of the trial would have been different. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996) (per curiam), *cert. denied,* —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997).

■ Appellant must identify the acts or omissions of counsel that are alleged to constitute ineffective assistance and affirmatively prove that they fall below the professional norm for reasonableness. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. After proving error, appellant must *affirmatively prove prejudice. Id.* at 693, 104 S.Ct. at 2067–68. Appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by only a portion of the trial, denied him a fair trial. *Id.* at 695, 104 S.Ct. at 2068–69; *McFarland,* 928 S.W.2d at 500. It is not enough for appellant to show that the errors had some conceivable effect on the outcome of the proceedings. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067–68. He must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt. *Id.* at 695, 104 S.Ct. at 2068–69. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* at 700, 104 S.Ct. at 2071.

With these standards in mind, we examine the acts and omissions that Johnston alleges were not the result of reasonable professional judgment. Those acts and omissions are: (1) counsel's late notification to Johnston of the trial date prevented him from adequately preparing himself; (2) counsel's late notification of the trial date prevented Johnston's mother, who lives in California, and Alfonso Vally, who lives out of town, from appearing as witnesses;[4] (3) counsel did not attempt to interview the State's witness Larsen or its potential witness Hooks;[5] (4) counsel spent, at most, five minutes talking with Johnston and two minutes talking with Wells immediately before trial, and never once inquired about their version of the facts;[6] and (5) counsel never interviewed Casey, a child, who was an eyewitness to the events.[7] Johnston argues that these witnesses would have had a profound impact on the deadlocked jury. Johnston did not in any form present what these witnesses' testimony would in fact have been to lead to the conclusion of "profound impact."

■ We first review Johnston's claim that counsel's late notification of the trial date prevented Johnston from adequately preparing himself. The review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Id.* at 689, 104 S.Ct. at 2065. The burden is on appellant to overcome that presumption. *Id.* Any allegation of ineffectiveness of counsel must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland,* 928 S.W.2d at 500; *Ex parte Cruz,* 739 S.W.2d 53, 59 (Tex.Crim. App.1987). In reviewing this determination, we consider the totality of the evidence. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067–68.

■ The record reflects that: (1) Johnston was arrested on March 23, 1991 and the trial began on November 15, 1994; (2) Johnston testified at trial; and (3) Johnston testified during his motion for new trial hearing that

---

4. The record contains two spellings of Vally's name, "Alphonso" and "Alfonso." The record does not clarify this discrepancy.

5. The record does not reflect who Larsen and Hooks are. They do not appear as witnesses in the statement of facts.

6. The record does not reflect who Wells is. Wells does not appear as a witness in the statement of facts.

7. The record provides no further information about Casey, and Casey did not testify at trial.

counsel notified him of the trial the day before trial started. Over three years elapsed between Johnston's arrest and the commencement of his trial. The record does not show how more notice of the trial date would have helped Johnston prepare himself or how the short notice adversely affected his preparation. Johnston has not, by record evidence on appeal, overcome the strong presumption that counsel's conduct falls within a wide range of reasonable representation.

■■■■ We next address Johnston's claim regarding counsel's interviewing of witnesses. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* at 691, 104 S.Ct. at 2066. Such a reason not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The appellant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. An appellant may base an ineffective assistance claim on an attorney's failure to present witnesses only if the appellant can show that the witnesses were available and their testimony would have benefitted the defendant. *Ross v. State,* 802 S.W.2d 308, 313 (Tex.App.—Dallas 1990, no pet.).

■■■ The record shows that Johnston's counsel, at a minimum, discussed the case with Johnston two days after the arrest, discussed the case with Johnston by phone several times, discussed the case with Johnston's expert, and was familiar enough with the State's witnesses' statements to thoroughly cross-examine them. The record gives no indication that counsel could have acquired any new or helpful information from more interviews or investigation or that his failure to conduct more interviews or investigation in any way limited or impeded Johnston's defense. *See Wilkerson v. State,* 726 S.W.2d 542, 550 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Except for Johnston's brother, Michael, the record fails to show whether the witnesses who did not testify at trial were available, what they would have

testified to, or how their testimony would have helped Johnston's defense. Michael's proffered testimony was both cumulative of, and in conflict with, Johnston's testimony. Nothing in the record shows that potential defenses were precluded. Johnston has failed to show counsel's performance was deficient. Moreover, assuming *arguendo* counsel's performance was deficient, Johnston has failed to satisfy the prejudice prong of *Strickland;* he has not shown a reasonable probability that had counsel further investigated, the result of the proceeding would have been different. *See McFarland,* 928 S.W.2d at 502.

Johnston further argues that he was denied effective assistance of counsel because counsel erroneously focused solely on the blood test and did not defend against the opinion testimony of the arresting officers. Johnston argues that the jury could have disbelieved the blood test as evidence of intoxication and believed the arresting officers' opinion testimony because counsel did not call any of Johnston's witnesses to corroborate his testimony about alcohol consumption or impairment of his physical or mental faculties.

■■■■ In evaluating the first prong of the *Strickland* inquiry, counsel's competence is presumed and an appellant must rebut this presumption by proving that the challenged action was not sound trial strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 2587–88, 91 L.Ed.2d 305 (1986) (citing *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65 (defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy)). A full inquiry into the strategy or tactics of counsel should be made only if, from all appearances after trial, there is no plausible basis in strategy or tactics for counsel's actions. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim.App. 1980); *Stenson v. State,* 695 S.W.2d 569, 571 (Tex.App.—Dallas 1984, no pet.). This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592

---

(Tex.Crim.App.1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance.[8] *Weeks v. State*, 894 S.W.2d 390, 391 (Tex.App.—Dallas 1994, no pet.).

The record shows that the State relied heavily on the blood test to prove Johnston's intoxication. Johnston's defensive theory appears to have been that he was not intoxicated. Johnston's counsel cross-examined all of the State's technical witnesses about their methodology. Johnston's counsel extensively cross-examined the State's toxicologist. Then, during the defendant's case in chief, counsel presented an opposing expert to contradict the State's expert on the results of the blood test. The jury's notes reflect its difficulty in reaching a unanimous verdict. The cold record before us does not clearly confirm that any reasonable trial counsel would have pursued a different strategy.

Furthermore, we cannot conclude that even had counsel defended against the opinion testimony of the arresting officers, the outcome of the trial would have been affected. Evidence of Johnston's intoxication was admitted through the opinion testimony of the arresting officers, the expert opinion testimony of the toxicologist, the opinion testimony of the intoxilyzer operator (albeit not based on an intoxilyzer result), and a videotape depicting Johnston in the intoxilyzer room on the night of his arrest. Even if counsel had attacked the opinion testimony of the arresting officers and the jury disbelieved the accuracy or significance of the blood test results, Johnston has not satisfied the prejudice prong of *Strickland* because he has not affirmatively proved an error by counsel so egregious that it affected the outcome of the trial.

Johnston has failed to meet his burden under *Strickland* and *Hernandez* on each of the complaints raised regarding trial counsel's performance. Johnston's first and second points of error are overruled.

## ADMISSION OF EVIDENCE

In his third point of error, Johnston complains that the trial court erred in admitting into evidence, over objection, the nurse's notes made at the time his blood was withdrawn because the notes contained hearsay "not made admissible by rule 803(6) or 803(8)" of the Texas Rules of Criminal Evidence.[9] Johnston argues that the nurse's notes were inadmissible as business records because they did not contain indicia of reliability. Johnston also argues that the nurse's notes were inadmissible as business records because they would be subject to exclusion as public records because they contained matters observed by law enforcement personnel, *i.e.*, the jail nurse.

The State contends that the admission of the nurse's notes was proper because the nurse was not a police officer or other law enforcement personnel. Alternatively, the State contends admission of the nurse's notes was harmless because Johnston later introduced the same information contained in the exhibit.

### Standard of Review

Generally, all questions affecting the admissibility of evidence are within the province of the trial judge. *Ross v. State*, 763 S.W.2d 897, 904 (Tex.App.—Dallas 1988, pet. ref'd). The trial court has broad discretion in determining the admissibility of evidence, and we will not reverse unless a clear abuse of discretion is shown. *Williams v. State*, 535 S.W.2d 637, 639–40 (Tex.Crim.App. 1976); *Spencer v. State*, 466 S.W.2d 749, 752–53 (Tex.Crim.App.1971). An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim.App.1990). A trial judge's ruling that evidence is admissible will be sustained if

---

8. The record indicates that Johnston was represented by attorney John Covington at trial. The record reflects that John Tatum acted as Johnston's attorney in filing the motion for new trial and on appeal.

9. At trial, the jail nurse's notes were *only* offered as business records under rule 803(6).

there is any basis to support it. *Ross,* 763 S.W.2d at 904.

## Business Records

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R.CRIM.EVID. 801(d). Hearsay is not admissible except as provided by statute or the rules of criminal evidence. TEX.R.CRIM.EVID. 802. Records of regularly conducted business activities, however, are not excluded from evidence by the hearsay rule even though the declarant is available as a witness. TEX.R.CRIM.EVID. 803(6). Records of regularly conducted business activities include:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

TEX.R.CRIM.EVID. 803(6).

■■■ To establish the predicate for a document's admissibility as a record of a regularly conducted business activity, the proponent must establish: (1) the record was made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of that business activity to make the record; (3) the record was made at or near the time of the event being recorded; and (4) the person making the record or submitting the information had personal knowledge of the events being recorded. TEX.R.CRIM. EVID. 803(6); *Philpot v. State,* 897 S.W.2d 848, 851–52 (Tex.App.—Dallas 1995, pet. ref'd).

■■■ The record contains the following exchange between counsel for the State and the witness sponsoring the nurse's notes:

Q. And, ma'am, would you tell the jury how you're employed, please?

A. I'm Director of Nurses to the Dallas County Jails.

Q. And, ma'am, how long have you been doing that?

A. Eighteen and a half years.

Q. Ma'am, would you tell the jury about your educational background?

A. I'm an RN and I have a BS in nursing administration.

Q. And Ms. Stacy, what are your current duties and responsibilities?

A. I'm over all the medical and services facilities of the jails, and I supervise the nurses in those jails and I'm also custodian of the medical records of all the inmates.

Q. Ma'am, are all the nurses under the supervision and direction of a licensed physician?

A. Yes.

Q. And how many nurses are under your supervision?

A. Close to sixty-nine.

Q. Was the nurse—I believe her name was Nurse Basham—on March 23, 1991, a licensed vocational nurse?

A. Yes.

Q. And was she [a] licensed vocational nurse under your supervision?

A. Yes, she was.

. . . .

Q. Ms. Stacy, I will show you what's been previously marked as State's Exhibit No. 2 and State's Exhibit No. 3. Do you recognize these exhibits?

A. Yes.

Q. And what are they, please?

A. They're medical records. Number 2 is a medical record of Jerold Boyd Johnston.

Q. And what type information is entered onto the exhibit?

A. The procedure that was performed by the person that performed the procedure.

Q. Were the entries noted on this exhibit made at or near the time of the events recorded?

A. Yes.

Q. Did the person who made these entries on this document have personal knowledge of the events recorded?

A. Yes, they did.

Q. Is this document [made] in the course of your regularly conducted business activities?

A. Yes.

Q. Is it the regular course of your business activity to compile this kind of record or data?

A. Yes, it is.

Q. Ma'am, are you the custodian of these records?

A. Yes, I am.

[Counsel for the State]: Your Honor, at this time the State moves to introduce State's Exhibits 2 and 3.

Through this testimony, the State established that: (1) Nurse Basham's records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of a jail nurse's business activity to make the records; (3) the entries in the records were made at or near the time of Nurse Basham's withdrawal of Johnston's blood; and (4) Nurse Basham had personal knowledge of the events being recorded. *See* TEX.R.CRIM.EVID. 803(6). Through this testimony, the State laid the proper foundation for admission of Nurse Basham's notes as business records. *See* TEX.R.CRIM.EVID. 803(6); *Philpot*, 897 S.W.2d at 851–52.

### Indicia of Reliability

■ Johnston relies on our holding in *Philpot* and the court of criminal appeals' holding in *Porter v. State* to contend that, despite this predicate, Nurse Basham's notes lacked indicia of reliability and were, therefore, inadmissible hearsay. *See Porter v.*

*State*, 578 S.W.2d 742, 746 (Tex.Crim.App. 1979); *Philpot*, 897 S.W.2d at 852. Johnston correctly contends that evidence that qualifies under the business records exception may still be excluded if the evidence does not have adequate indicia of trustworthiness. *Philpot*, 897 S.W.2d at 852. However, Johnston's reliance on *Philpot* and *Porter* as support for his argument in this case is misplaced.

In *Philpot*, the sponsoring witness, a parole officer for the Board of Pardons and Paroles, provided the proper foundation for a report's admission but did not establish the reliability or trustworthiness of the defendant's urinalysis *test results. Id.* at 851. This Court concluded that there was no evidence: (1) the *tests conducted* were standard tests for the controlled substance in question; (2) the entries were made by a person who had personal knowledge of *the test and the test results;* or (3) the *test results* were records kept in the usual course of business of the laboratory. *Id.* at 852.

Our holding in *Philpot* was based on *Porter*, in which the court of criminal appeals again held that the evidence in question, although admissible under a recognized hearsay exception, was still inadmissible because it was not trustworthy. *See id.* (citing *Porter*, 578 S.W.2d at 746). The evidence did not have the indicia of reliability sufficient to ensure the integrity of the fact-finding process because: (1) the sources of the *opinions in the report* were in most cases unnamed and (2) none of the authors or unnamed sources were shown to be competent to make the statements attributed to them. *Philpot*, 897 S.W.2d at 852.

■ In this case, Nurse Basham's report included no test results, scientific conclusions, scientific opinions, or scientific statements. Her report included only a rendition of facts: that she withdrew Johnston's blood, where she withdrew it, when she withdrew it, and how she withdrew it. Her report, offered as a business record through the testimony of another sponsoring witness, was sufficiently reliable to establish whether Nurse Basham followed proper procedures and to establish a link in the chain of custody of Johnston's blood from the time Nurse Bas-

ham drew it until the time *the toxicologist, who personally testified at trial, tested it and formed the scientific conclusion that Johnston had a blood alcohol level of 0.13.* The trial judge, in relying on the supervisor's foundation testimony and in finding Nurse Basham's report trustworthy, did not abuse his discretion in admitting the report as a business record. *See* Tex.R.Crim.Evid. 803(6).

### Inadmissibility as Public Record Bars Admission as Business Record

At trial, Johnston objected to the introduction of the nurse's notes based on *Bermen.*[10] *See Bermen v. State,* 798 S.W.2d 8 (Tex. App.—Houston [1st Dist.] 1990), *pet. dism'd, improvidently granted, per curiam sub nom. Hendricks v. State,* 817 S.W.2d 86 (Tex.Crim. App.1991). In *Bermen,* the Houston court of appeals considered whether evidence subject to exclusion under rule 803(8)(B) of the Federal Rules of Evidence because it was a matter observed by law enforcement personnel could be received into evidence "through the back door" as a business record under rule 803(6) of the Federal Rules of Evidence if the evidence contains statements made in an adversarial setting and resulting from a criminal investigation. *See id.* at 11 (citing *United States v. Cain,* 615 F.2d 380, 381–82 (5th Cir.1980)).

Johnston argues on appeal that the nurse's notes were inadmissible as business records because they were subject to exclusion as public records because they contained matters "observed by police officers and other law enforcement personnel" such as jail nurses. The State contends that the admission of the nurse's notes was proper because the nurse was not a police officer or other law enforcement personnel.

For the purpose of responding to Johnston's exclusion argument, we assume, but do not decide, that the notes in question set forth "matters observed pursuant to a duty imposed by law as to which matters there was a duty to report," as required by rule 803(8)(B). Because we conclude that Nurse Basham was neither a police officer nor other law enforcement personnel, Johnston's argument that *Bermen* bars the admission of these notes as business records is meritless.

Evidence otherwise admissible under rule 803(8) is nevertheless excluded under 803(8)(B) if it constitutes *"matters observed by police officers and other law enforcement personnel. ..."* Tex.R.Crim.Evid. 803(8)(B) (emphasis added). Johnston's reliance on the 803(8)(B) exclusion to render Basham's notes inadmissible as business records, however, is without merit.

A jail nurse is not a police officer or other type of law enforcement personnel within the scope of rule 803(8)(B). *See* Tex.R.Crim. Evid. 803(8)(B). A jail nurse does not perform law enforcement duties comparable to those of a police officer. *Compare Garcia v. State,* 833 S.W.2d 564, 569 (Tex.App.—Dallas 1992) (police officers make observations and factual findings at the scene of a crime or arrest), *aff'd,* 868 S.W.2d 337 (Tex.Crim.App. 1993), *with Mulder v. State,* 707 S.W.2d 908, 914 (Tex.Crim.App.1986) (jail nurse/licensed vocational nurse reported inmate's injury to county health officer). A jail nurse's duties are more comparable to those of a county health officer or a medical examiner. *See, e.g., Mulder,* 707 S.W.2d at 914 (county health officer responsible for treating inmates at county jail); *Garcia,* 868 S.W.2d at 341 (medical examiners' primary responsibility is to determine the cause of death); *Garcia,* 833 S.W.2d at 569–70 (medical examiner makes investigations in a wide variety of circumstances). Medical examiners are not considered "other law enforcement personnel" for purposes of exclusion under the public records hearsay exception, and thus their reports are admissible as public records. *Garcia,* 868 S.W.2d at 342. We hold that Nurse Basham, a jail nurse, was not a police officer or other type of law enforcement per-

---

**10.** The statement of facts indicates that, at trial, Johnston made a rather vague objection to the introduction of the nurse's notes based on a case called "Bourbon." We assume that counsel was referring to *Bermen v. State,* 798 S.W.2d 8 (Tex. App.—Houston [1st Dist.] 1990), *pet. dism'd, improvidently granted, per curiam sub nom. Hendricks v. State,* 817 S.W.2d 86 (Tex.Crim.App. 1991).

sonnel within the scope of rule 803(8)(B). *See* Tex.R.Crim.Evid. 803(8)(B).

■ Moreover, even assuming *arguendo* that the records were otherwise admissible under rule 803(8) and that Nurse Basham was considered to be "other law enforcement personnel," the notes would not be subject to exclusion for that reason. She was not recording her observations at the scene of a crime. Instead, she was recording her objective observations and performing her ordinary, routine duty of recording the circumstances surrounding the withdrawing of Johnston's blood. Her notes and observations, therefore, meet the test set out in *Pondexter v. State,* 942 S.W.2d 577, 585 (Tex. Crim.App.1996). In *Pondexter,* the Court of Criminal Appeals held that a police officer's "objective observations" made while performing ordinary, routine duties were *presumed reliable* under rule 803. *Id.*[11]

The trial judge, in overruling Johnston's objection to the admission of the jail nurse's notes as business records, did not abuse his discretion. We overrule Johnston's points of error and affirm the judgment of the trial court.

---

11. In *Pondexter,* the court noted that the reason for the adoption of rule 803(8)(B) was the presumed *unreliability* of police officers' observations *at the scene of a crime. Pondexter,* at 585. However, the reasons for the possible impairment of an officer's judgment are not implicated in situations when officers are conducting routine business matters, such as the recording of "objective observations." *Id.* at 585. In *Pondexter,* the police officer was performing his ordinary, routine duties of recording the property taken in and out of the property room; the court held, therefore, that his observations and notations were *presumed reliable* and were admissible under rule 803. *Id.*