

**NUMBER 13-11-00016-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**ARNULFO GARCIA,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 36th District Court
of San Patricio County, Texas.**

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Chief Justice Valdez**

Following a jury trial, appellant, Arnulfo Garcia, was convicted of two counts of aggravated sexual assault of a child, a first-degree felony, for which he was sentenced to twenty years of imprisonment and fined $10,000, and one count of indecency with a child, a third-degree felony, for which he was sentenced to five years of imprisonment and fined $10,000. *See* TEX. PEN. CODE ANN. § 22.021 (West Supp. 2011) (aggravated

sexual assault); *id.* § 21.11 (West 2011) (indecency with a child). He appeals his convictions by two issues, asserting that he received ineffective assistance of counsel and that the evidence supporting the verdict was insufficient. We affirm.

## I. BACKGROUND

Appellant is the step-grandfather of the child complainant, A.S., who was eleven years old at the time of trial. Bobbi Garcia ("Garcia"), the complainant's grandmother, was married to appellant at the time of the alleged incidents. Both appellant and Garcia worked for the State of Texas as correctional officers for a prison facility in Beeville, Texas. Garcia was a lieutenant in the maximum security area, and appellant was a captain of the laundry division.

A.S. visited her grandmother and appellant at their home for extended visits on more than twenty occasions. During a visit in 2009 when A.S. was ten years old, she told Garcia that appellant had touched her on the inside of her "private parts" and "butt" when she was five years old. Garcia confronted appellant and left, taking A.S. to Garcia's father's house. At her father's house, Garcia again questioned A.S. regarding these issues in front of her father, A.S.'s great-grandfather. During this series of questions, A.S. stated that appellant touched her "private parts" and "butt" when she was five years old and then again when she was eight years old, and she further stated that appellant exposed his penis to her while they were watching television. Garcia then took A.S. to her son's ex-girlfriend's house, where she again questioned A.S. Garcia subsequently informed her son, A.S.'s father, who questioned A.S. regarding her statements. The following day, A.S.'s mother, Jessica, and her stepfather took A.S. to the San Patricio County sheriff's office. Garcia also took A.S. to Driscoll Children's

2

Hospital where she was interviewed and examined. The examination showed no signs of sexual abuse; however, Carol McLaughlin, the sexual assault nurse examiner, testified that the lack of physical evidence did not indicate that an assault had not occurred. Garcia also took A.S. to the Child Advocacy Center, where A.S. made a video-taped statement in which she said that appellant assaulted her each time that she visited Garcia and appellant.

In its case-in-chief, the State offered the testimony of Garcia, A.S., and McLaughlin. At trial, A.S. testified that appellant sexually abused her when she was five and eight. She further testified that appellant exposed his penis to her on more than ten occasions while they were watching television together. Defense counsel presented testimony from appellant and ten additional witnesses. Appellant denied that he touched A.S. and stated that she may have accidentally seen his penis on one occasion when his pajama pants were unbuttoned. While Garcia had previously testified that their marriage was "average," appellant testified that they had separated on two different occasions and fought frequently. Appellant recounted that he had filed criminal charges against Garcia because she had assaulted him; however, he later dropped the charges. Appellant further testified that, immediately before A.S.'s visit when she made the outcry, he had informed Garcia that their marriage was over. The ten additional witnesses called by appellant testified regarding appellant's good reputation for truthfulness.

As will be discussed more fully herein, appellant's defensive theories at trial concerned his estrangement from Garcia; Garcia's credibility as an outcry witness;

3

A.S.'s credibility as a complainant based on inconsistencies in A.S.'s various statements; and appellant's reputation for truthfulness.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, appellant argues that the trial court erred in overruling his motion for new trial "because he was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution in that trial counsel failed to investigate the law and facts necessary to present a defense to the offense of aggravated sexual assault of a child."

### A. STANDARD OF REVIEW

We review the denial of a motion for new trial under an abuse of discretion standard. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds by* TEX. R. APP. P. 21.8(b); *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); *Cueva v. State*, 339 S.W.3d 839, 856–58 (Tex. App.—Corpus Christi 2011, pet. ref'd); *Shanklin v. State*, 190 S.W.3d 154, 158 (Tex. App.—Houston [1st Dist.] 2005, *pet. dism'd*, 211 S.W.3d 315 (Tex. Crim. App. 2007); *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd). A trial court abuses its discretion by denying a motion for new trial only when its decision is arbitrary or unreasonable, or when no reasonable view of the record could support the trial court's ruling. *Charles*, 146 S.W.3d at 208; *Cueva*, 339 S.W.3d at 856–58; *Escobar v. State*, 227 S.W.3d 123, 126 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The ruling of the trial court is presumed to be correct, and it is the appellant's burden to establish the contrary. *Jensen v. State*, 66 S.W.3d 528, 545 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *State v. Read*, 965 S.W.2d 74, 77 (Tex. App.—Austin 1998, no pet.).

4

The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, and "the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse." *State v. Herndon*, 215 S.W.3d 901, 907–08 (Tex. Crim. App. 2007) (quoting *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005)). We do not substitute our judgment for that of the trial court. *Charles*, 146 S.W.3d at 208.

Moreover, when the trial court files findings of fact, as in this case, "[a]n appellate court should defer to the trial court's findings of facts regarding the credibility and demeanor of the witnesses, viewing the evidence in the light most favorable to the trial judge's rulings." *Gamboa v. State*, 296 S.W.3d 574, 584 (Tex. Crim. App. 2009); *Cueva*, 339 S.W.3d at 857; *My Thi Tieu v. State*, 299 S.W.3d 216, 233 (Tex. App.— Houston [14th Dist.] 2009, pet. ref'd); *Shanklin*, 190 S.W.3d at 158–59; *see also* TEX. R. APP. P. 21.8. Because the trial judge is the sole judge of the credibility of the witnesses, a trial court does not abuse its discretion by denying a motion for new trial based on conflicting evidence. *See Lewis*, 911 S.W.2d at 7. And we "presume that all reasonable factual findings that could have been made against the losing party were made against that losing party." *Charles*, 146 S.W.3d at 208; *see Beck v. State*, 573 S.W.2d 786, 791 (Tex. Crim. App. 1978) (noting that the trial judge has the right to accept or reject any part of a witness's testimony at a hearing on a motion for new trial).

Appellant contends that this Court should make a de novo determination of whether trial counsel's performance was deficient since there were no disputed facts and the only issue is whether the trial court properly applied *Strickland*. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) (stating the legal standard for the

5

determination of claims concerning ineffective assistance of counsel). However, under well-established precedent, we perform our *Strickland v. Washington* analysis through an abuse of discretion standard of review, reversing only if the trial court's decision to deny the motion for new trial is arbitrary or unreasonable. *See Charles*, 146 S.W.3d at 208; *Cueva*, 339 S.W.3d at 856; *My Thi Tieu*, 299 S.W.3d at 223; *Shanklin*, 190 S.W.3d at 158; *State*, 967 S.W.2d at 542; *see also Mendoza v. State*, Nos. 14-06-01015-CR & 14-06-01016-CR, 2008 Tex. App. LEXIS 4324, at **6–7 (Tex. App.—Houston [14th Dist.] June 12, 2008, pet. ref'd). Therefore, we do not apply a de novo standard of review in conducting the *Strickland* test.

## B. APPLICABLE LAW

The United States Constitution, the Texas Constitution, and article 1.051 of the Code of Criminal Procedure guarantee an accused the right to reasonably effective assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2011); *see Strickland*, 466 U.S. at 686; *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prevail on a claim regarding the ineffective assistance of counsel, an appellant must meet the two-pronged test established by the United States Supreme Court in *Strickland*. *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id.* Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Id.* In order to satisfy the first prong, appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under

6

the prevailing professional norms. *Id.* To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

An appellate court must start with a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Id.* In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Id.* "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). In determining whether counsel provided effective assistance, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Id.; Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). While a single error will not typically result in a finding of ineffective assistance of counsel, an egregious error may satisfy the *Strickland* inquiry on its own. *Lopez*, 343 S.W.3d at 143.

A criminal defense attorney has a duty to make an independent investigation of the facts of a case. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). A breach of this duty may result in a finding of ineffective assistance when "the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). In defining the duty to investigate, the United States Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary . . . . [A] particular decision not to investigate must be directly assessed for

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland*, 466 U.S. at 691; *see McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996). When trial counsel does not conduct a complete investigation, his conduct is "reasonable only to the extent that reasonable professional judgments support the limitations on investigation." *Ex parte Napper*, 322 S.W.3d 202, 209 (Tex. Crim. App. 2010). Strategic choices made after a thorough investigation of the law and facts relevant to a defendant's plausible defense options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable "precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91; *see Ex parte Kunckle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993); *Wylie v. State*, 908 S.W.2d 307, 308 (Tex. App.—San Antonio 1995, pet. ref'd); *Jenkins v. State*, 870 S.W.2d 626, 631 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

In the context of an ineffective-assistance claim, a criminal defense lawyer's duty to investigate includes seeking out and interviewing potential witnesses. *Brennan v. State*, 334 S.W.3d 64, 71 (Tex. App.—Dallas 2009, no pet.). An ineffective assistance of counsel claim based on counsel's failure to call witnesses fails in the absence of a showing that the witnesses were available to testify and that the defendant would have benefitted from their testimony. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004). In accordance with this doctrine, when an appellant argues that counsel was ineffective because he failed to utilize an expert witness, the appellant must also show that the expert's testimony would have been beneficial to him, *see Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd); and *Teixeira v. State*, 89

8

S.W.3d 190, 194 (Tex. App.—Texarkana 2002, pet. ref'd), and that the witness was available to testify. *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Johnston v. State*, 959 S.W.2d 230, 236 (Tex. App.—Dallas 1997, no pet.).

## C. ANALYSIS

Appellant filed a motion for new trial alleging that he was denied effective assistance of counsel based on his trial counsel's failure to investigate and consult with a psychological expert regarding the facts of the case and the scientific theories regarding false allegations of sexual abuse of a child.[1] The trial court held an evidentiary hearing on the motion. In support of his claim of ineffective assistance of counsel, appellant presented the testimony of Dr. Jerome Brown, Dr. Matthew Ferrara, and trial counsel John Gilmore.

Dr. Brown, an expert witness in the area of forensic science and forensic psychology, testified that pretrial interviews of a child are often flawed because of the manner in which the interview is conducted. He also testified that family dynamics may consciously or subconsciously influence a child to make a false accusation. Dr. Brown testified that false statements, false memories, and coercive questioning can influence the accuracy of a child's testimony.

Dr. Brown stated that his review of the trial documents offered in this case caused him concern because A.S. was interviewed regarding the sexual assault allegations on multiple occasions "prereport to the authorities" and "every interview is a

---

[1] Significantly, the State did not call an expert psychologist on any issue in this case. In some circumstances, the necessity of a defense expert has been evaluated in the context of whether or not the case involved "a significant issue of fact on which the State would present expert testimony, and which the knowledge of a lay jury would not be expected to encompass." *Jackson v. State*, 992 S.W.2d 469, 474 (Tex. Crim. App. 1999).

9

possible opportunity for the child to be influenced adversely." He identified several instances in the trial testimony where Garcia recounted using suggestive or leading questions when she spoke with A.S. regarding her allegations of sexual assault and indecency. Dr. Brown testified that, as an expert, he can assist defense counsel in identifying potential problems in child interviews and assist the attorney in questioning the child and outcry witnesses regarding their interactions.

On cross examination, Dr. Brown testified that there is a "great danger" that a defense attorney who does not use him or a similar expert is per se ineffective. He stated that it would be "very difficult" but "possible" for a defense attorney to cross-examine a child witness without expert help. Dr. Brown admitted that he had no personal knowledge regarding counsel's theory of the trial or counsel's trial performance. Dr. Brown testified that he can explain to a judge or jury that there are certain factors that can influence a child to make a false statement; however, testimony regarding those factors would not necessarily have to be elicited by an expert witness and could be brought out by lay witnesses. Dr. Brown ultimately testified that he could not say whether counsel was ineffective in this case.

Dr. Ferrara, an expert in forensic psychology, testified that this case involves an outcry witness telling "a ten-year-old child that there is more to her story." According to Dr. Ferrara, Garcia told A.S. three times that there was "more to her story", while in other instances, she used leading questions which are forbidden in dealing with children because they provide the answer in the question. Dr. Ferrara identified three areas of scientific research that concern the accuracy of child testimony—the child's role as a cooperative conversationalist, the role of a biased interviewer, and the use of leading

questions—and stated that the underlying case implicated all three areas of research. Dr. Ferrara also testified that repeated interviews and interviews by individuals in authority can also reduce the accuracy of child testimony.

Dr. Ferrara stated that the relationship between the outcry witness, Garcia, and appellant was another important consideration in this case. Garcia's anger at appellant resulted in "effective anger" in A.S. against appellant. Stated otherwise, the anger and bias that Garcia had toward appellant could have influenced A.S. to feel similarly. Dr. Ferrara testified that in bitter divorce cases, the rate of false and malicious sexual abuse allegations can increase from 6% to 36%.

According to Dr. Ferrara, the scientific literature states that, when dealing with sex offense cases involving three to five-year-old children, the type of questioning technique used by Garcia will result in about 45% of children making a false statement. For children ages five to eight-years-old, the figure drops to 40%, and with children between the ages eight and ten, it is between 30 to 35%. At the time of the outcry in this case, A.S. was ten.

Dr. Ferrara testified that it is possible for a lawyer to prepare a trial defense in a case involving the sexual assault of a child without an expert, but not in this case because "there is so much overlap between this case and the scientific literature about false outcries." Dr. Ferrara identified specific literature that supported his testimony and further stated that the type of testimony he was offering had been presented in court and had met *Daubert* challenges. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993) (establishing the criteria for the admissibility of expert estimony). Dr. Ferrara said that he did not see how an attorney's performance could be "optimal" or "effective"

11

without using scientific research and literature and that he did not believe an attorney could effectively represent an accused in this case without using it. Dr. Ferrara nevertheless conceded that he had no personal knowledge of trial proceedings and no idea what testimony was adduced at trial.

Gilmore testified that he has been an attorney for over thirty years and that he practices solely in the area of criminal law. He has tried four or five sexual assault cases each year. He stated that he has won more than seventy-five percent of these cases.

Gilmore testified regarding his defensive theories in the case. First, he testified that his defense in the case involved showing that Garcia had a motive as a disgruntled spouse to influence A.S.'s testimony. He argued that A.S.'s allegations were false and were created by Garcia because she was angry with appellant. At trial, counsel elicited testimony regarding numerous fights and separations between appellant and Garcia. He questioned Garcia and appellant regarding an incident of domestic violence in which Garcia hit appellant over the head with a trash can, cutting him and causing a black eye. Through counsel's questioning, he elicited further testimony indicating that appellant had filed a police report regarding this incident and that the criminal charges regarding this incident could have jeopardized Garcia's job. Counsel further elicited testimony that appellant had told Garcia that he was "over with the marriage" immediately before A.S.'s visit in which she made the outcry.

Second, counsel further testified that he approached the case by attacking the credibility of A.S. He cross-examined A.S. regarding inconsistencies in her trial testimony, her videotaped interview, and her statements to outcry witnesses.

Testimony at trial included the identity of whom she had spoken to prior to her reported statement: Garcia, her great-grandfather, her father, and his ex-girlfriend Ashley. He allowed the jury to see her video-taped interview, although it was emotional, in order to show inconsistencies between the recorded statement, the complainant's outcry statements, and her in-court testimony.

Third, counsel testified that he also defended the case by offering testimony from ten different character witnesses who testified regarding appellant's good reputation for truthfulness.

Trial counsel testified that he investigated the relationship between the parties by interviewing appellant and his family in the months before trial. He met with appellant multiple times in preparing for trial and went through his testimony, jury presentation, and cross-examination. Counsel testified that he told appellant what he needed to defend the case, and appellant brought in witnesses to interview or testify. Counsel testified that the "only information I have received came from my client," and the only investigation he performed was talking to the witnesses provided by appellant. He performed no other independent investigation.

Counsel testified that he has never consulted with a psychologist in preparation for trial for the purpose of attacking the complainant, and he has never used an expert to explore defenses based upon parental alienation or contamination of the child by a caregiver. He has taken courses or attended lectures or continuing legal education seminars where parental alienation syndrome or contamination was the subject matter; however, he did not recall specific literature or magazine articles that discussed these

psychological issues.  He was aware of and had attended seminars concerning expert witnesses and defenses that are available in sexual assault cases.

He did not consider consulting with a psychologist for this case and had never consulted with a psychologist in a sexual assault of a child case concerning the relationship of the outcry witness's relationship to the defendant.  He was aware of at least one case where an expert has testified regarding false allegations based on the psychological issues discussed herein.  He did not consult an expert in preparing appellant's defense, did not know what literature might have supported the defense, and did not do any research on psychological issues involved in this defense.

Counsel testified that he did not believe that he provided ineffective assistance of counsel in this case, although the results were not what he had wanted.  He testified that he represented appellant to the best of his abilities.  He did not believe that he needed an expert witness to assist him in cross-examination of Garcia or A.S., and he had "never seen [an expert] witness used in [his] 30 years to attack the credibility of an outcry."  Counsel further testified that he had not seen anyone attempt to introduce expert testimony like the defense was attempting to introduce in evidence.  Counsel testified that if he had introduced expert testimony such as that suggested, it could possibly have opened the door to the State to introduce testimony that would have been harmful to his client, such as testimony that would have supported the credibility of A.S.'s statements.

The trial court denied appellant's motion for new trial.  In ruling from the bench, the court observed:

[T]he experts' testimony, very compelling, I appreciate the information I have been give[n], I don't really know that I learned anything new. I hate to say that. . . .

The factual allegations that the doctors have spoke[n] of today, again, were brought up before the jury, almost every single one that I had. I am going through my notes trying to see if any of those issues were not brought up by Mr. Gilmore through his client and through their work.

Yes, [in] hindsight, having these two individuals who I personally believe are highly, highly competent would have been helpful, but I don't believe that it falls into the ineffective range, and that's where we're getting in these cases.

Subsequently, the trial court rendered a written order denying the motion for new trial and entered findings of fact and conclusions of law, stating:

(1) The Defendant was represented at trial by the retained attorney of his choice, John Gilmore.

(2) All issues raised during the Motion for New Trial were issues raised by defense counsel during the criminal trial. As such, the jury heard this testimony and sided against the Defendant.

(3) The Court refused to make a finding that counsel was per se ineffective for not calling licensed psychologists during trial to attack the credibility of the child witness's testimony.

(4) The Court, having heard the evidence during the criminal trial, found defense counsel was not ineffective.

Appellant argues that counsel was ineffective "[g]iven the nature of the allegations, trial counsel's defensive theory of the case, and the fact that two unchallenged experts stated that in this case[,] an expert was needed to explain the effect of the multiple interviews of the complainant using leading or improper questions and the impact that a biased questioner might have on a 10-year-old child and that research indicated that in these circumstances[,] there was over a 36% chance of a false allegation of sexual abuse." For support, appellant relies on *Ex parte Ard*, No. AP-75,704, 2009 Tex. Crim.

15

App. Unpub. LEXIS 181 (March 11, 2009) (per curiam) (not designated for publication); *Ex parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005); and *Wright v. State*, 223 S.W.3d 36 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd). We address each case in turn.

*Ex parte Ard* is not published and has no precedential value. *See* TEX. R. APP. P. 47.7(a). In *Ard*, which concerned the sexual assault of a child, trial counsel consulted with an expert in forensic psychology regarding how false memories may be implanted through repetitious suggestion; however, though the expert did testify at trial, counsel failed to elicit such favorable testimony from him. *Ex parte Ard,* 2009 Tex. Crim. App. Unpub. LEXIS 181, at **6–7. The Texas Court of Criminal Appeals concluded that this failure on the part of trial counsel was below any objective standard of reasonableness and that there was a reasonable probability that but for counsel's deficient performance, the result of the trial would have been different. *See id.* In the case before us, in contrast, appellant's trial counsel did not fail to elicit testimony from an expert witness who was already testifying at trial.

In *Ex parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005), a case involving injury to a child, the court of criminal appeals concluded that counsel's performance was ineffective and deficient because his failure to obtain and review medical records and retain a medical expert was not a strategic decision, but an economic one. *See id.* at 467. The record reflects that is not the situation in the present case.

In *Wright v. State*, 223 S.W.3d 36 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd), the First Court of Appeals reversed the defendant's conviction for aggravated sexual assault of a child based on trial counsel's failure to contact an expert in forensic

16

psychology to assist him in preparing his case for trial and failure to present evidence that supported the only plausible theory of defense. *Id.* at 44–45. The defendant contended that, although his attorney's theory of defense was that the allegations were false and were the result of acrimony that resulted from appellant's divorce, counsel nevertheless did not introduce any evidence other than defendant's own testimony that his ex-wife was upset with him to support his theory of defense and refute the allegations. *Id.* Counsel testified that he did not retain an expert in psychology because (1) he was told that any expert he hired would not be able to interview the complainant, and (2) by the time he had received notes taken by the complainant's therapist, he did not have time to contact an expert. *Id.* at 44.

> The bottom line is that exculpatory evidence in [the notes from the complainant's therapist], expert testimony about deviations from standard protocol reflected in the notes, and expert testimony regarding false allegations of sexual assault in connection with divorce proceedings constitute powerful evidence that would have supported appellant's defensive theory. At the very least, the assistance of such an expert to assist in the cross-examination of the adverse witnesses in this case could have made a significant difference in regard to the outcome of this case.

*Id.* The *Wright* case is substantially similar to this case. Here, however, (1) counsel utilized Garcia's animus toward appellant and A.S.'s conflicting stories as part of appellant's defense at trial; (2) counsel testified that he did not retain an expert because he believed he could portray the same information through cross-examination; (3) counsel presented his multi-layered defense through testimony from numerous witnesses and documentary evidence; and (4) this case lacked "exculpatory evidence."

Based upon the record before us, we conclude that appellant has not met his burden to show that counsel provided ineffective assistance of counsel. As an initial matter, appellant has not shown that these experts were available to testify, and this is

17

an element of the ineffective assistance argument premised on counsel's decision not to utilize an expert. *See Butler*, 716 S.W.2dat 55; *Johnson*, 959 S.W.2d at 236. Accordingly, appellant's claim regarding counsel's failure to use these witnesses must fail. *See Ex parte White*, 160 S.W.3d at 52; *Butler*, 716 S.W.2d at 55; *Johnston*, 959 S.W.2d at 236.

Further, appellant has not shown that counsel's failure to retain experts in psychology fell below an objective standard of reasonableness under the prevailing professional norms. *See Lopez*, 343 S.W.3d at 142. We note that if it is ineffective assistance of counsel as a matter of law not to consult an expert psychologist in a sexual assault of a child case, even when the State is not using an expert psychologist, this would greatly affect the State's duty to appoint experts at public expense under *Ake v. Oklahoma*, 470 U.S. 68 (1985) and *DeFreece v. State*, 848 S.W.2d 150 (Tex. Crim. App. 1993).

In this case, counsel testified that he did not retain psychology experts in this case because the substance of the proffered expert testimony was encompassed in his cross-examination. Although counsel did not offer expert testimony regarding the accuracy of the child's testimony or statements, the trial record reflects that counsel cross-examined A.S. regarding the inconsistencies between her statements and testimony and cross-examined Garcia regarding her animus toward appellant. While the experts testified that their assistance at trial was necessary in a case like the one at bar, Dr. Brown admitted that psychological issues impacting the accuracy of a child's testimony could be addressed through lay testimony. Moreover, while Dr. Ferrara stated that it was "impossible" to defend a case like the one at bar without a

psychological expert, under Texas Rule of Evidence 702, the formulation and assessment of legal strategies would seem to be beyond Dr. Ferrara's psychiatric field of expertise. In this regard, we note that there was no evidence presented from attorneys indicating that the prevailing professional norm requires expert psychological testimony in cases regarding sexual abuse of a child.

Moreover, and finally, even if we were to assume that counsel's failure to investigate and defend the case through the retention of psychological experts made him "deficient" for purposes of the *Strickland* test, appellant has not shown there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *See Lopez*, 343 S.W.3d at 142. We overrule appellant's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant contends that "the evidence is legally insufficient to establish that the child, [A.S.], who testified at trial, is the same person identified as a 'Mary' in the indictment." According to appellant, the "record is silent concerning any identification that the testifying witness [A.S.], an eleven year old child was the same person referred to in the indictment as 'Mary' and in the Notice of Pseudonym filed by the State."

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier

19

of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, *Isassi*, 330 S.W.3d at 638. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Isassi*, 330 S.W.3d at 638.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246; *Malik*, 953 S.W.2d at 240. Measuring the sufficiency of the evidence against the hypothetically correct jury charge ensures that a defendant will be acquitted when the State actually fails to meet its burden of proof rather than when the State includes a simple error in the indictment or jury charge. *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and

legal theories contained in the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

A variance arises when there is a difference between the allegations in the indictment and the evidence presented at trial. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). An immaterial variance between the indictment and the proof at trial is disregarded in a sufficiency of the evidence review. *Id.* A material variance, however, is fatal if it prejudices the defendant's substantial rights. *Id.* When determining materiality, the court "must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Id.* A defendant bears the burden of showing prejudice. *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001). The court will disregard the variance if the defendant fails to explain how it prevented him from preparing an adequate defense or how he could be tried again under the same facts. *Hilburn v. State*, 312 S.W.3d 169, 175 (Tex. App.—Fort Worth 2010, no pet.).

Appellant argues that the name of the complaining witness must be alleged in the charging instrument and must be proven beyond a reasonable doubt, and failing to prove what is alleged in the indictment renders the evidence insufficient to support his conviction. *See Ex parte Lewis*, 544 S.W.2d 430, 431 (Tex. Crim. App. 1976); *see also* Tex. Code Crim. Proc. Ann. arts. 21.02, 21.07 (West 2009). According to appellant, the identity of the complainant is an adjudicative fact that requires more than judicial notice of the pseudonym and "the record reflects that the State failed to comply with [Texas

21

Code of Criminal Procedure article] 57.02 and the trial court failed to comply with [Texas Rule of Evidence] 201(g)" by introducing the notice of pseudonym into evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02 (West Supp. 2011); TEX. R. EVID. 201(g). Article 57.02(b) of the Texas Code of Criminal Procedure permits the victim of a crime to choose a pseudonym to identify himself or herself in all public records. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02(b). In response, the State contends, inter alia, that appellant's argument is not supported by relevant authority and appellant did not object to the use of the pseudonym or otherwise indicate surprise or confusion as to the identity of the complainant.

A variance between the indictment and the evidence may be fatal to a conviction because due process guarantees that the defendant have notice of the charges against him. *Rojas v. State*, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998). This doctrine has been incorporated in cases involving pseudonyms, and a variance between the indictment and the evidence with regard to a pseudonym will not be fatal to a conviction so long as the defendant's due-process right to notice is satisfied. *Stevens v. State*, 891 S.W.2d 649, 651 & n.2 (Tex. Crim. App. 1995); *Washington v. State*, 59 S.W.3d 260, 262 (Tex. App.—Texarkana 2001, pet. ref'd); *Greeno v. State*, 46 S.W.3d 409, 414 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also Byrd v. State*, 336 S.W.3d 242, 254 (Tex. Crim. App. 2011); *Maldonado v. State*, No. 13-08-00360-CR, 2010 Tex. App. LEXIS 4550, at **18–19 (Tex. App.—Corpus Christi June 17, 2010, no pet.) (mem. op., not designated for publication).

Counts III, IV, and V of the indictment allege that the complainant is a child using the pseudonym "Mary." The State filed a notice of use of pseudonym providing that the

22

"State is giving notice that in regards to the above-referenced cause, the victim alleged in the body of the [i]ndictment and in offense reports as 'Mary' is [A.S.]." During trial, the State requested that the trial court take judicial notice that a notice of pseudonym had been filed "indicating that the Mary alleged in the indictment is, in fact, [A.S.]." Appellant's counsel stated, "[t]hat's true, Judge, no objection," and the trial court responded to the request in the affirmative. The jury charge identified the victim as "Mary."

We conclude that appellant's due process right to notice was satisfied. *See Stevens*, 891 S.W.2d at 651. The State filed the appropriate notice of pseudonym which appellant expressly acknowledged. Appellant did not object to the notice of pseudonym and did not object that he was unaware of the complainant's name or identity such that he was unable to prepare an adequate defense. Appellant's defenses to the allegations did not include mistaken identity or alibi. A.S. testified at trial. During his trial testimony, appellant referred to A.S. by name in discussing and denying the alleged incidents of abuse. A.S. was appellant's step-grandchild and had she had visited appellant's home on numerous occasions. Under these circumstances, any variance between the indictment and the proof offered at trial did not cause appellant surprise or prejudice his rights. *See id.*; *Washington*, 59 S.W.3d at 262; *Greeno*, 46 S.W.3d at 414; *see also Maldonado*, 2010 Tex. App. LEXIS 4550, at **18–19. Moreover, the evidence was sufficient to support the jury's finding that A.S. was the same child that was named in the indictment. We overrule appellant's second issue.

23

## IV. CONCLUSION

Having overruled appellant's issues on appeal, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
31st day of May, 2012.