**AFFIRM; and Opinion Filed July 16, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00459-CR

**ELVIN JOHNSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F15-75049-U**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Schenck

Elvin Johnson appeals his conviction for indecency with a child by sexual contact. In two issues, appellant asserts that the trial court erred in not granting him a hearing on his motion for new trial, and that he is entitled to a new trial because his trial counsel rendered ineffective assistance. We affirm the trial court's judgment. Because all issues are settled in the law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

The State charged appellant with indecency with a child for unlawful contact with his four-year-old cousin C.J. Appellant was seventeen years' old at the time of the alleged offense. On April 28, 2015, the trial court appointed counsel to represent appellant. On February 24, 2017, the trial court approved the hiring of Dr. Aaron Pierce, a licensed forensic psychologist, as an expert

witness in the case. Prior to trial, trial counsel filed a verified motion for continuance because Dr. Pierce was scheduled to testify in another case on the scheduled trial date. The trial court denied the motion and trial began on April 17, 2017.

The evidence showed that on Thanksgiving Day of 2014, C.J. and his parents went to his paternal grandmother's house to have a family meal with relatives.[1] After dinner appellant obtained C.J.'s parents' consent for C.J. to play a video game with him in the back bedroom of the house while the others watched the football game on television or napped. C.J., who was seven at the time of trial, testified that as he and appellant were playing the video game, appellant asked him if he could touch him in a manner prohibited by penal code section 21.11(a)(1). C.J. indicated he initially said no, but he was so focused on the game that he then said yes on accident. C.J. testified appellant then touched him unlawfully.

C.J.'s mother was the outcry witness. She testified that one night in January 2015, C.J. told her that someone unlawfully touched him. When she asked him who had done so, C.J. responded, "Elvin." She further testified that C.J. told her the details of the unlawful touching. C.J. repeated the same details to his father. C.J.'s mother indicated C.J. told her he did not immediately tell her what had occurred because he wanted to continue playing the video game.

C.J.'s parents testified about changes they noted in C.J.'s behavior after Thanksgiving. They testified that in the weeks following Thanksgiving and before C.J. reported the abuse to his mother, he started having bad dreams and reverted to wetting his bed at night. One night, C.J. was fearful that the doors of their apartment were unlocked and insisted on helping his mother ensure all of them were locked before he went to bed.

Detective Emilio Henry, a child abuse investigator with the Dallas Police Department who investigated the case, testified that he observed C.J.'s forensic interview from another room. He

---

[1] The relatives were C.J.'s grandmother, aunt, uncle, and two cousins.

noted that C.J. was very sharp for a four-year-old. On cross-examination, Detective Henry admitted that there is no way for him to tell if abuse actually happened, he can only repeat what he is told and that the only way he could know for sure is if appellant confessed to him. On redirect, Detective Henry indicated that a four-year-old cannot get a lie past a forensic interviewer.

Reynald Lara, a forensic interviewer from the Dallas Children's Advocacy Center ("DCAC") who conducted the forensic interview of C.J, testified that DCAC uses a nationally recognized protocol to interview children and that they do not use leading questions, as they strive to avoid suggesting the abuse occurred. Lara indicated he gives the child the chance to tell him what did or did not happen. If the child says something happened, he tries to get more detail, including sensory and peripheral details. Lara noted that he was surprised at how articulate and focused C.J. was during the interview. He indicated C.J. was able to express himself, appeared to understand his questions, and maintained eye contact. He further indicated that C.J. was a little hesitant in discussing the incident, so he used an anatomical drawing as an aid. C.J. was able to identify numerous body parts on the drawing, including the penis. Lara stated C.J. answered his questions and sometimes went on to voluntarily give additional information. C.J. corrected him on one or two occasions, so it appeared C.J. was paying attention. Lara testified about the concepts of coaching and suggestive memory and stated he is trained to explore that. He indicated he did not have any concern about coaching or suggested memory in this case. On cross-examination, Lara acknowledged that he knew what the allegations were in this case before he began his interview of C.J. and that his job was to verify the allegations. He agreed that there is no study as to whether you can tell if a person is telling the truth or not. When questioned whether parents continually talking to a child could influence the interview Lara admitted that could influence the interview, and he did not know if anyone influenced C.J. Lara further indicated that he does not

determine whether the child is telling the truth or not. On redirect, Lara stated he did not have any concerns about whether C.J. was telling him about something that had not occurred.

Nicole Taquino, C.J.'s therapist, testified she saw C.J. for approximately six months and then on occasion, and during their sessions she worked with him on education-based things and coping as far as different kinds of touches, boundaries, and safety. She indicated she did not see any signs that C.J. had been influenced by what someone else said. On cross-examination, Taquino admitted that there is no way you can tell if someone is being truthful, that there are no studies that show how you can tell if someone is being truthful, that the signs and symptoms of bedwetting and bad dreams can be a normal four-year-old behavior, and that not every child who has been abused wets the bed and has bad dreams. She further admitted that she could not say whether what C.J. told her was influenced by someone else.

Appellant testified at trial. He denied the material allegations, and claimed he did not know why C.J. would say he did the things for which he was charged. His defensive theories were that C.J. fabricated the allegation or was coached into making the allegation, and that he did not have an opportunity to touch C.J. because family members kept coming in and out of the back bedroom to check on them. On cross-examination, appellant admitted that he was alone with C.J. for about an hour, while others were watching the football game, and that he was alone with C.J. for varying lengths of time, including several twenty-minute time spans.

Appellant's father testified that he appeared at trial because he knows appellant did not do what he was accused of. Appellant's father testified about a falling out he had with C.J.'s father years ago due to his failure to attend C.J.'s father's graduation from college and suggested that situation may have spurred the allegations against his son.

Trial counsel did not subpoena the expert he hired, Dr. Pierce, to be present at trial, and no testimony of Dr. Pierce was offered into evidence.

The jury found appellant guilty of the indecency with a child and sentenced him to five years' confinement and assessed costs of $2,500. Appellate counsel was then substituted for trial counsel and filed a motion for new trial. In his motion for new trial, appellant complained that trial counsel provided ineffective assistance of counsel by (1) failing to issue a subpoena or for not calling Dr. Pierce to testify, and (2) waiting 672 days to request the appointment of an expert, leaving the expert only 48 days to review all of the necessary documents and to prepare a report before trial began. Appellant attached the affidavits of trial counsel and Dr. Pierce, and a copy of the verified motion for continuance to his motion for new trial. The trial judge, who presided over the trial, denied appellant's motion for new trial without holding a hearing. This appeal followed.

**DISCUSSION**

In his first issue, appellant argues the trial court erred in not granting him a hearing on his motion for new trial.

The purpose of a hearing on a motion for new trial is to: (1) "decid[e] whether the cause shall be retried" and (2) "prepare a record for presenting issues on appeal in the event the motion is denied." *State v. Gonzalez*, 855 S.W.2d 692, 695 (Tex. Crim. App. 1993) (plurality opinion) (citing *Trevino v. State*, 565 S.W.2d 938, 941 (Tex. Crim. App. 1978)). While the court of criminal appeals has held that the opportunity to prepare a record for appellate review makes a hearing on a motion for new trial a critical stage, it has also held that such a hearing is not an absolute right. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). "[A] hearing is *not* required when the matters raised in the motion for new trial are subject to being determined from the record." *Id.* at 816 (citing *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985)); *see also Darrington v. State*, 623 S.W.2d 414, 416 (Tex. Crim. App. 1981) (no abuse of discretion to overrule motion for new trial without a hearing when "there were no issues presented in appellant's motion for new trial which required proof to be developed outside the record").

–5–

Conversely, a "trial judge abuses his discretion in failing to hold a hearing on a motion for new trial [when] that [motion] raises matters which are *not* determinable from the record. [citations omitted]. To hold otherwise would deny the accused meaningful appellate review." *Reyes*, 849 S.W.2d at 816.

"[R]ecogniz[ing] that an unrestricted requirement of a hearing on matters not determinable from the record could lead to 'fishing expeditions,'" the court of criminal appeals has also held that even a defendant who has raised such matters is not entitled to a hearing on his motion for new trial unless he "establishes the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *Id.* Thus we require, as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record, that the motion be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim. *Bahm v. State*, 219 S.W.3d 391. 395 (Tex. Crim. App. 2007).

When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). In so doing, "we reverse 'only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Id.* And "in the absence of [such] an abuse of discretion this Court would not be justified in reversing the judgment." *Id.* Our review, however, is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. *Id.* at 340. This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied. *Id.* If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold a hearing. In fact, under such circumstances the trial judge abuses his discretion in failing to hold a hearing. *Id.*

Initially we note that "ineffective assistance of counsel may be raised in a motion for new trial." *Reyes*, 849 S.W.2d at 815. Under *Strickland v. Washington*, a defendant seeking to challenge counsel's representation must establish that his counsel's performance (1) was deficient, and (2) prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficiency the appellant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 1996). And to show prejudice, the appellant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Before he will be entitled to a hearing on his motion for new trial alleging ineffective assistance of counsel, a defendant must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different. *Smith*, 286 S.W.3d at 341. But a trial court may rule based on sworn pleadings and affidavits without oral testimony; live testimony is not required. TEX. R. APP. P. 21.7; *Rivera v. State*, 89 S.W.3d 55, 58 n.9 (Tex. Crim. App. 2002). "It has long been held that a trial court may decide a motion for new trial based on sworn pleadings and affidavits admitted in evidence without hearing oral testimony." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (citing *Scaggs v. State*, 18 S.W.3d 277, 281 (Tex. App.—Austin 2000, pet. ref'd)).

In his motion, appellant alleged that his trial counsel was ineffective because he failed to subpoena Dr. Pierce to testify, and waited until a month and a half before trial to request funds to retain an expert. Because "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record," the record will generally "not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard." *Mitchell*, 68 S.W.3d at 642. The same is true in the instant case; whether counsel's failures in fact show a deficiency that prejudiced appellant's defense is not determinable from the record. Because appellant's claim is not determinable from the record, we must decide whether his motion and affidavits show reasonable grounds that could entitle him to relief. To do so, the appellant must allege facts that would reasonably show that his counsel's representation fell below the standard of professional norms and that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687.

The affidavits appellant submitted with the motion do not show that any basis for relief exists. Trial counsel's affidavit does not confess the *Strickland* factors. His affidavit merely provides the date that the trial court approved the hiring of an expert and the date he contacted Dr. Pierce and sent him discovery, refers to his attempts to communicate with the expert and the expert's busy schedule, and indicates he did not subpoena Dr. Pierce prior to April 13, 2017, because Dr. Pierce could not provide a complete report until he had viewed the forensic interview. The motion for continuance indicated that Dr. Pierce would not be able to view the forensic interview until April 13, 2017, trial was set for April 17, and that Dr. Pierce had been subpoenaed to appear in Ellis County for a trial on April 17. The motion stated Dr. Pierce would testify as to the scientific bases for (1) symptoms of sexual abuse, (2) false allegations, especially by minor children, and (3) determining truth or falsity of an allegation during a forensic interview. Deciding not to call a witness when the substance of his opinions are unknown, is a reasonable trial strategy.

*See Prine v. State*, 537 S.W.3d 113, 118 (Tex. Crim. App. 2017) (decision to call witnesses is a strategic choice that involves weighing risks and benefits of testimony, which is exactly the type of strategic decision that ordinarily requires court to evaluate an attorney's explanations before concluding counsel was ineffective).

Neither the motion for continuance nor the affidavit contain trial counsel's stated subjective reason for not obtaining the trial court's approval to hire an expert at an earlier time. This Court presumes that trial counsel's explanation, had there been one, would have indicated reasonable trial strategy. *See Lopez,* 343 S.W.3d at 143. Also, appellant cites to no case law or other authority that mandates a particular time period for trial counsel to obtain an expert prior to trial. Hence, the record does not affirmatively demonstrate that trial counsel was deficient. *See Thompson*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Moreover, Dr. Pierce's affidavit does not establish that his testimony reasonably could have changed the outcome of this case. *See Smith*, 286 S.W.3d at 341. Dr. Pierce indicates that had he been present at trial, he would have been able to testify in essence as a reverse "oath helper"[2] as follows:

- That in most cases like this one a medical exam will usually not provide evidence that a sexual assault occurred or did not occur;

- That preschool aged children are apt to say things that are not true. This is because they are more susceptible to suggestion due to cognitive development, because they generally want to please, and fantasy/reality confusion;

- Importantly, I would have also testified that there are no reliable tools or methods for detecting whether a child is being "truthful" about an allegation of sexual abuse;

---

[2] While we have no doubt as to the admissibility of such opinion testimony as a general matter, testimony particularized to the particular child witness is generally inadmissible. *See Schultz v. State*, 957 S.W.2d 52, 58 (Tex. 1997) (expert opinion testimony must aid, not supplant, the jury's decision. Expert testimony does not assist the jury if it constitutes a direct opinion on the truthfulness of a child complainant's allegations); *Yount v. State*, 872 S.W.2d 706, 708 (Tex. 1993) (expert testimony which assists the jury in determining an ultimate fact is admissible, but expert testimony that decides an ultimate fact for the jury, such as a direct opinion on the truthfulness of the child, crosses the line and is not admissible under rule 702).

- Further, I would have testified that the consensus in the scientific literature is that we cannot tie specific behaviors to sexual abuse and that, contrary to most people's beliefs, most people do not do a good job determining a witness's credibility;

- Additionally, I understand that the attorney for the State asked his expert about whether there was any evidence in this case that suggested that the complaining witness had been coached and that the State's expert said that there was no such evidence. I would have testified that the consensus of the scientific literature is that there is no agreed upon evidence that shows or indicates coaching. Accordingly, the absence of such evidence cannot be evidence that there was no coaching; and,

- Finally, I would have testified to the scientific consensus and the data concerning the rates of false allegation of sexual abuse. This consensus tells us that the rate of false allegations is between 6% and 35%.

Dr. Pierce further indicated that he has not met or examined C.J. and that his testimony would have been devoted to false allegations of child sex abuse. Dr. Pierce went on to state that he and trial counsel had decided that his role would be to help trial counsel prepare for cross-examination of the State's expert witnesses and to be available in case his testimony was required. Dr. Pierce further stated that he consulted with trial counsel and provided him with guidance on how to cross-examine the State's expert witnesses.

The record reflects that Dr. Pierce had in fact provided trial counsel with such guidance and that virtually all of Dr. Pierce's potential testimony, to the extent it might have aided appellant and assisted the jurors, had already been developed, from the State's own witnesses.

For instance, as to Dr. Pierce's anticipated testimony that, in cases like this one, a medical exam will not provide evidence as to the occurrence of the abuse, Detective Henry testified that he would not expect any medical findings to be present in this case and there was no evidence that a medical exam resulted in findings of abuse.

As to Dr. Pierce's anticipated testimony that there are no reliable tools or methods for detecting whether a child is being truthful about an allegation of sexual abuse, trial counsel cross examined Detective Henry extensively on this topic, and Detective Henry admitted that he had no way of determining whether an allegation of sexual abuse was true or false and the only way he

would know for sure would be if the defendant confessed to him. Also, on cross-examination, the forensic interviewer agreed that he was not aware of any study showing whether a person is telling the truth or a lie. In addition, C.J.'s therapist agreed that no studies show how to gauge a person's truthfulness.

As to Dr. Pierce's anticipated testimony that the consensus in scientific literature is that specific behaviors cannot be tied to sexual abuse and that, contrary to most people's beliefs, most people do not do a good job determining a witness's credibility, C.J.'s parents testified to changes in C.J.'s behavior after Thanksgiving Day. Trial counsel questioned C.J.'s therapist extensively about this topic and she agreed that the described behavior could be normal for a four-year-old child and that not every child who has been abused wets his bed and has bad dreams.

As to Dr. Pierce's anticipated testimony that the consensus of the scientific literature is there is no agreed upon evidence that shows or indicates coaching, and the absence of such evidence cannot be evidence that there was no coaching, trial counsel questioned the forensic interviewer extensively about coaching and he agreed that had C.J.'s parents been continuously talking to him about the abuse, that could affect C.J.'s performance during the forensic interview. The forensic interviewer also agreed that he did not know if anyone influenced C.J. to say appellant touched him, and he did not know how to ascertain whether a child had been coached.

As to Dr. Pierce's anticipated testimony concerning the rate of false sexual abuse allegations and that pre-school aged children are more susceptible to suggestion due to cognitive development, that testimony is general in nature and not specifically applied to C.J. In *Ryder v. State*, 514 S.W.3d 391, (Tex. App.—Amarillo 2017, pet. ref'd), the court of appeals concluded that the substance of the expected testimony of an expert witness who was not called to testify at trial, that was similar to this anticipated testimony, was not enough to show that the appellant was

–11–

entitled to relief.[3]

As to appellant's complaint that trial counsel was ineffective by failing to hire Dr. Pierce at an earlier date, appellant has not established had trial counsel hired Dr. Pierce at an earlier date, the outcome of the trial could have been different. Dr. Pierce's affidavit does not reveal that he would have prepared in any other way or would have presented testimony other than that outlined in his affidavit had he had more time. In the end, appellant's counsel was able to establish the substantive grounds on which the jury might have called C.J.'s testimony into question. That he was potentially deprived of that opinion coming from a witness with the court approved imprimatur of "expert" and particularized to C.J. himself, is not an injury that would support a finding of ineffective assistance or prejudice. *Yount*, 872 S.W.2d at 708.

Accordingly, because the affidavits and the verified motion for continuance did not establish the existence of reasonable grounds showing appellant could be entitled to relief, no hearing was necessary. Therefore, we conclude the trial court did not abuse its discretion in denying the motion without holding a hearing. We overrule appellant's first issue.

In his second issue, appellant urges the trial court abused its discretion by denying his motion for new trial based on his claims of ineffective assistance of counsel. When, as here, an appellant asserts ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion, reversing only if the trial judge's decision was clearly erroneous and arbitrary. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). This is a deferential standard of review that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling. *Id.* In determining whether the trial court abused its discretion, an appellate court must not substitute its own judgment for that of the trial court, and

---

[3] In *Ryder*, the appellant argued trial counsel was ineffective because he obtained an expert to testify regarding the defense's theory that the victims' allegations of sexual abuse were mistakes, creations, or fabrications, but then failed to subpoena the expert to testify at trial. *Ryder*, 514 S.W.3d at 404.

–12–

it must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* The trial court's ruling is within the "zone of reasonable disagreement" when there are two reasonable views of the evidence. *Id.*

To obtain relief for ineffective assistance of counsel, a defendant must establish that: (1) counsel's performance was deficient and that his assistance fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* two-prong test). Unless appellant can prove both prongs, an appellate court must not find counsel's representation ineffective. *Lopez*, 343 S.W.3d at 142.

To satisfy the first prong, appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson*, 9 S.W.3d at 813. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To prove the second prong, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Lopez*, 343 S.W.3d at 142.

The general rule is that the failure to call a witness does not constitute ineffective assistance of counsel without a showing that the witness was available to testify and that his testimony would have benefitted the defendant. *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Johnston v. State*, 959 S.W.2d 230, 236 (Tex. App.—Dallas 1997, no pet.). As stated above, we have concluded appellant failed to establish Dr. Pierce's testimony would have benefited him. As to the timeliness of trial counsel's engagement of Dr. Pierce, we have concluded appellant has failed to establish an earlier engagement of Dr. Pierce would have changed the outcome of the trial. Accordingly, appellant has failed to satisfy the *Strickland* test and the trial court did not abuse its discretion in denying his motion for new trial. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

170459F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ELVIN JOHNSON, Appellant

No. 05-17-00459-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F15-75049-U.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 16th day of July, 2018.